UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EVELYN CAROLYN KIRBY, Plaintiff, | ) | |
| v. | ) | Case No.: CV-08-32 |
| DAVOL INC. and C.R. BARD, INC., Defendants. | ) | |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S**
**<u>NOTICE OF REMOVAL</u>**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Davol Inc. ("Davol") and Defendant C.R. Bard, Inc. ("Bard"), with full reservation of any and all defenses, objections, and exceptions, including but not limited to objections to service, venue, and statute of limitations, hereby remove the above-captioned action from the Circuit Court of Baldwin County, Alabama, to this Court. In support of removal, Defendants state as follows:

## I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

1. Plaintiff commenced this action with his Complaint filed in the Circuit Court of Baldwin County, Alabama on or about December 21, 2007. Bard was served with the Complaint on or about January 2, 2008. Davol has not been served but expressly joins in this Notice of Removal.

2. As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants (including Plaintiff's Complaint) is attached hereto as Ex. A.

3. This Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the Circuit Court of Baldwin County, Alabama, where Plaintiff's Complaint is pending. *See* 28 U.S.C. § 81(c)(2).

4. This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is being filed within 30 days after the first receipt by Bard, through service, of Plaintiff's Complaint, which sets forth the bases for removal.

5. Pursuant to 28 U.S.C. § 1446(d), Defendants are filing a written notice of this removal with the clerk of the Circuit Court of Baldwin County, Alabama, where Plaintiff's Complaint is pending. A copy of this Notice of Removal and the written notice of same provided to the state court is also being served upon Plaintiff's counsel in accordance with 28 U.S.C. § 1446(d).

## II. THIS COURT HAS DIVERSITY JURISDICTION

6. As will be shown more fully below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, and there is complete diversity of citizenship between Plaintiff and Bard and Davol. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

### A. The Amount-In-Controversy Requirement Is Satisfied

7. Although Defendants deny Plaintiff's claims, and although Plaintiff seeks an unspecified amount damages, Defendants believe in good faith that more than $75,000 is in controversy, and therefore the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met. Plaintiff's claims sound in product liability and seek recovery for personal injuries allegedly caused by a defective medical device, the Composix® Kugel® hernia repair patch, that was manufactured and sold by Davol and used in conjunction with Plaintiff's hernia repair. (*See*

Compl. ¶¶ 4-5.) Plaintiff alleges that due to its allegedly defective design the Composix® Kugel® hernia patch failed, and, as a result, "developed abdominal infections and required subsequent procedures...[and] required prolonged hospitalizations and medical treatment." (*Id.* ¶ 23). Plaintiff further alleges that she has "suffered physical pain and mental anguish" and has "incurred substantial medical bills and has suffered loss of other monies." (*Id.* ¶¶24-25). In addition, Plaintiff alleges that she has suffered "severe emotional distress." (*Id.* ¶¶53-54; ¶¶58-59). Plaintiff seeks "judgment in her favor" and asks for "such other relief as may be fair and reasonable" and for her costs. (*See* Compl. Prayer).

8. The amount-in-controversy requirement is easily met here because the types of injuries alleged in Plaintiff's Complaint make it "facially apparent that the claims are likely above" the requisite amount-in-controversy. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement."); *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 221 (D.N.H. 2004) (denying remand where, "[o]bjectively viewed, [the plaintiff's] claims for her [injuries] and the loss of consortium and emotional distress . . . could be valued at $75,000 or more"). In fact, other plaintiffs have brought other actions against Davol and Bard making similar allegations as the ones expressed here pleading an amount-in-controversy in excess of $75,000. *See, e.g. Staton v. Davol Inc. and C.R. Bard, Inc., et al.*, No. 07-cv-1033-S (N.D. Ala.) (alleging damages in excess of amount required by 28 U.S.C. § 1332) (Ex. B); *see also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295-96 (S.D.N.Y. 2001) (looking to other suits involving the same product to resolve amount-in-controversy inquiry). Further, federal courts in analogous cases have held that

the amount-in-controversy threshold is met because, as here, "the complaint . . . does not preclude recovery in excess of $75,000." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 296.

**B. The Parties Are Completely Diverse**

9. Plaintiff is a resident citizen of Baldwin County, Alabama. (*See* Complaint ¶ 1).

10. Defendant Davol is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. Accordingly, Davol is a citizen of those two states. *See* 28 U.S.C. § 1332(c)(1).

11. Defendant Bard is, and has been at all relevant times, a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. Accordingly, Bard is a citizen of New Jersey. *See* 28 U.S.C. § 1332(c)(1).

WHEREFORE, Defendant Davol Inc. and Defendant C.R. Bard, Inc. respectfully remove this action from the Circuit Court of Baldwin County, Alabama, to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Should any question arise as to the propriety of this removal, Defendants respectfully request an opportunity to provide briefing and oral argument.

Dated: January 17th, 2008

Respectfully submitted,

CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL LLP

Crawford S. McGivaren, Jr.
Melanie M. Atha
ATTORNEYS FOR DEFENDANT DAVOL INC. AND DEFENDANT C.R. BARD, INC.

OF COUNSEL:
Cabaniss, Johnston, Gardner, Dumas
& O'Neal LLP
2001 Park Place North
Suite 700
Birmingham, AL 35203
(205) 716-5200

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the foregoing on all parties to this proceeding, or their attorney of record, as follows:

Mr. Steven A. Martino
TAYLOR MARTINO KUYKENDALL
Post Office Box 894
Mobile, AL 36601

by placing the same in the United States mail, first class postage prepaid and properly addressed this 17th day of January, 2008.

BY: ______________________
OF COUNSEL

# EXHIBIT A

ELECTRONICALLY FILED
12/21/2007 12:34 PM
CV-2007-901004.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

**IN THE CIRCUIT COURT OF BALDWIN COUNTY, ...**

| | | |
|---|---|---|
| **Evelyn Carolyn Kirby**<br>**Plaintiff** | * | |
| | * | **Civil Action No:** |
| **vs.** | * | |
| **DAVOL INC. and C.R. BARD INC.**<br>**Defendants** | * | |

## COMPLAINT

**COMES NOW** the Plaintiff EVELYN CAROLYN KIRBY by and through her attorney of record and states her complaint against these Defendants as follows:

1. Plaintiff, EVELYN CAROLYN KIRBY ("Ms. KIRBY") is an adult resident of Baldwin County, Alabama.

2. Defendant, Davol INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. Davol has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. Davol focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy. Davol at all times relevant did substantial and continuous business in the State of Alabama.

3. Defendant, C.R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of Davol and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Alabama.

## Facts

4. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Ms. KIRBY's body.

5. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Ms. KIRBY's body.

6. The Defendants submitted their 501k Application to the Food and Drug Administration (hereinafter referred to as the "FDA") on January 22nd, 2001. Following this 501k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

7. Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Ms. KIRBY, Plaintiff's physicians, and the general public.

8. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physicians screenings and reviews as early as 2002. An Establishment Inspections Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time.Thus, BARD and DAVOL intentionally, wantonly, and/or negligently failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and

concerns of the physician surveyors were actively concealed by DAVOL and BARD from Ms. KIRBY, Plaintiff's surgeons, and the public at large.

9. In January of 2006, Ms. KIRBY had a hernia repair performed at Thomas Hospital in Fairhope, Alabama. Ms. Kirby had a Composix Kugel Patch implanted during this procedure.

10. The Composix Kugel Patch hernia repair product implanted in Ms. KIRBY was designed manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Ms. KIRBY, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

12. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30th, 2005 to initiate a partial Kugel Patch distribution hold. Davol and BARD actively and intentionally

chose not to immediately inform Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

13. An FDA Class I recall is issued for problems related to medical devices that are potentially life threatening or could cause a serious risk to the health of the patients implanted with the devices.

14. On December 22nd, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

15. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

16. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;
ii. misidentified numerous Kugel Patch complication events;
iii. failed to apply the product quality hold and release procedure on a timely basis;
iv. failed to properly follow the procedures for conducting design validation review;
v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;

vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints.

vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;

viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

17. On March 24th, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective mesh product.

18. On January 10th, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

19. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering BARD's and DAVOL's FDA recall of the product.

20. Neither Ms. KIRBY nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Ms. KIRBY's injuries until the subsequent recalls of the defective Kugel Patches took place.

21. After experiencing extreme pain and discomfort, on October 31st, 2006, Ms. KIRBY was admitted to Thomas Hospital for an incision and drainage of an abdominal wall abscess.

22. On January 9th, 2007, Ms. Kirby required an abdominal exploration and small

bowel resection with lysis of adhesions. Finally, on February 21st, 2007, Ms. KIRBY underwent a complex incisional hernia repair due to recurrent hernia secondary to the defective mesh. The defective mesh was removed at this time because of the aforementioned problems. A non-Kugel Mesh Patch was placed at this time.

23. Ms. KIRBY developed abdominal infections and required subsequent procedures due to the complications resulting from the Kugel Patch placement. Furthermore, she required prolonged hospitalizations and medical treatment as a direct and proximate cause of the defective nature of the Kugel Mesh Patch used in her hernia repair operation.

24. Ms. KIRBY has suffered and will continue to suffer physical pain and mental anguish.

25. Ms. KIRBY has incurred substantial medical bills and has suffered loss of other monies.

26. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

27. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

28. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

29. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

30. Upon information and belief, the complications and failures associated with the

Composix Kugel Patch is not limited to the sizes which DAVOL and BARD has already recalled.

31. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in face of the high degree of complication and failure rates.

**COUNT I**

**Negligence**

32. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

33. Defendants DAVOL and BARD were negligent in the following respects:

34. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

35. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared, and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

36. DAVOL and BARD so negligently and carelessly designed, manufactured,

tested, inspected, labeled, packaged, distributed, recommended, displayed, sold, examined, and supplied the Composix Kugel Patch that they were dangerous and unsafe for the use and purpose for which it was intended.

37. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. Davol and BARD knew or should have known the Composix Kugel Patch would cause serious injury. Furthermore, they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Ms. KIRBY.

38. Defendants DAVOL and BARD owed a duty to Ms. KIRBY to adequately warn her and her treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

39. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

40. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in MS. KIRBY's hernia repair surgery failed, resulting in Ms. KIRBY suffering pain and harm.

41. As a direct and proximate result of DAVOL's and BARD's negligence, Ms. KIRBY has suffered injuries and damages.

42. DAVOL's and BARD's conduct in continuing to market, sell and distribute the

Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

Wherefore, Ms. KIRBY requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II

### Strict Product Liability

43. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

44. Defendants DAVOL and BARD are strictly liable to Ms. KIRBY in the following respects:

45. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

46. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. Ms. KIRBY's Composix Kugel Patch was a Class I recalled device that failed while in her body causing her to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of her Composix Kugel Patch.

47. At all times mentioned, the Composix Kugel Patch was substantially in the same

condition as when it left the possession of DAVOL.

48. The Composix Kugel Patch implanted into Ms. KIRBY was being used in a manner reasonably anticipated at the time it was implanted in her by her surgeon.

49. The Composix Kugel Patches, like the one found in Ms. KIRBY, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented ad constituted an unreasonable risk of danger and injury to Ms. KIRBY as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;
ii. The Composix Kugel Patch as designed and manufactured was unsafe to Ms. KIRBY;
iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Ms. KIRBY;
iv. The Composix Kugel Patch did not perform safely a an ordinary consumer/patient, like Ms. KIRBY, would expect;
v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;
vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;
vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;
viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;
ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.
x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

50. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard

for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

Wherefore, Ms. KIRBY requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III

### Negligent Infliction of Emotional Distress

51. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

52. Defendants DAVOL and BARD are liable to Ms. KIRBY for the negligent infliction of emotional distress in the following respect:

53. Ms. KIRBY suffered severe emotional distress, which was a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

54. Ms. KIRBY suffered severe emotional distress, which was a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery. Therefore, DAVOL and BARD are liable to Ms. KIRBY.

55. DAVOL's and BARD's conduct in continuing to market, sell and distribute the

Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed a completes indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAOL, BARD and others from similar conduct in the future.

Wherefore Ms. KIRBY requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT IV**

**Intentional Infliction of Emotional Distress**

56. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

57. Defendants DAVOL and BARD are liable to Ms. KIRBY for the intentional infliction of emotional distress in the following respect:

58. Ms. KIRBY suffered severe emotional distress, which was a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

59. Ms. KIRBY suffered severe emotional distress, which was a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel

Patch for hernia repair surgery, in complete and reckless disregard of safety to Ms. KIRBY. Therefore, DAVOL and BARD are liable to Ms. KIRBY.

60. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented an intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

Wherefore, Ms. KIRBY requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief as this Court deems just and appropriate.

## COUNT V

### Breach of Implied Warranty

61. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

62. Defendants DAVOL and BARD are liable to Ms. KIRBY for their breach of implied warranty in the following respect:

63. DAVOL and BARD sold the Kugel Patch which was implanted in Ms. KIRBY. DAVOL and BARD impliedly warranted to Ms. KIRBY, her physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they intended.

64. DAVOL and BARD knew or should have known that the Composix Kugel Patch

at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

65. Ms. KIRBY, her physicians and healthcare providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

66. When the Composix Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

67. Ms. KIRBY suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

## COUNT VI

### Failure to Warn

68. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

69. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch Thomas Hospital for hernia repair surgeries.

70. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Ms. KIRBY received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Furthermore, the Composix Kugel Patches were not accompanied by

proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

71. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that was known or reasonably scientifically knowledgeable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

72. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Ms. KIRBY had her hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

73. Ms. KIRBY did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

74. Ms. KIRBY suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

75. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**COUNT VII**

**Fraud**

76. Ms. KIRBY re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

77. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

78. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Ms. KIRBY received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Furthermore, the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

79. DAVOL and BARD were aware of the dangerous and defective condition of the products and intentionally withheld this information from Ms. KIRBY, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

80. DAVOL and BARD fraudulently presented to Ms. KIRBY, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

81. Ms. KIRBY and Plaintiff's physicians relied upon the fraudulent misrepresentation

and Concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

82. As a direct and proximate result of Ms. KIRBY's reliance on DAVOL's and BARD's fraudulent misrepresentations and concealments, Ms. KIRBY was seriously and permanently injured.

83. The conduct of DAVOL and BARD in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter DAVOL, BARD and others from similar conduct.

Wherefore, Ms. KIRBY respectfully requests judgment in her favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for her costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

Plaintiff, EVELYN CAROLYN KIRBY
By her attorneys,

STEVEN A. MARTINO
TAYLOR MARTINO KUYKENDALL
Post Office Box 894
Mobile, Alabama 36601
PH: 251/433-3131
Facsimile: (251) 433-4207

Dated:

**Defendants may be served by CERTIFIED MAIL as follows:**

C.R. BARD, Inc.
c/o Registered Agent
730 Central Avenue
Murray Hill, NJ 07974

Davol Inc.
c/o Registered Agent
100 Sockanossett Crossroad
PO BOX 8500
Cranston, RI 02920